28 C.C.P.A.(Patents)

### In re SLOAN.

### Patent Appeal No. 4388.

Court of Customs and Patent Appeals.
Nov. 8, 1940.

Archworth Martin, of Pittsburgh, Pa. (William B. Jaspert, of Pittsburgh, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

Appellant brings to us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 1 to 6, inclusive, of appellant's application for a patent, the ground of rejection being lack of patentability in view of the cited prior art. No claims appear to have been allowed. All of the claims are method claims.

Claim 1 is illustrative of the claims before us and reads as follows: "1. The method of forming glassware, which comprises the steps of forming an inverted parison in a parison mold, removing the mold from the parison, re-heating the parison while exposing a portion thereof to the atmosphere, placing a forming mold over the re-heated portion of the parison while maintaining its inverted position, blowing the re-heated portion of the parison to the shape of the forming mold, and removing the mold from the formed article."

The subject matter of appellant's application is described in said application as follows:

"This invention relates to a method of making hollow glassware, more particularly to a method of forming paste-mold ware such as lamp chimneys, tumblers, bulbs and the like.

"The invention contemplates the making of iron blow mold and paste-mold ware by the steps of forming an inverted parison, removing the parison molds from the the blank so-formed, re-heating the formed parison in a closed burner, placing a finishing mold over the parison, and blowing the parison to finished form, all while the parison is maintained in the inverted position.

"The method further provides for chilling a portion of the parison which acts as a support for the parison during the entire finishing operation."

The references cited are: Ingle, 1,680,-544, August 14, 1928; Canfield, 1,756,813, April 29, 1930.

The patent to Ingle states:

"My invention relates to the manufacture of hollow glassware by the method wherein a blank or parison is formed in a parison mold and is thereafter expanded to final shape in a finishing mold.

"The object of my invention is to simplify the process of making glassware by the parison method, by dispensing with the use of neck-rings and transfer mechanisms, and to improve the quality of the ware by shortening the time during which the parison is exposed to the air.

"I accomplish these results by providing an inverted parison mold with which is associated a member which contributes to the formation of the parison and which is adapted to support the parison after the mold is removed. I also provide a finishing mold to close around the parison when the parison mold is removed and the parison is left supported at the parison-forming position. The parison may then be expanded in the finishing mold without moving it from its original position, or the finishing mold may be reverted to upright position and the glass may be expanded in the finishing mold after the usual interval of drawing down or elongation."

The patent to Canfield states:

"This invention relates to the art of making hollow blown glassware, and it has particular relation to the production of ware having relatively thin walls, such as lamp bulbs and tumblers.

"One of the objects of the present invention is to provide a simple and effective method of making hollow glassware of the character described, including the steps of introducing a mold charge into a neck ring and blank mold; pressing the charge therein by a combined pressing plunger and blowhead to form a blank on parison; removing the blank mold; introducing blowing air from the blowhead to the blank and simultaneously applying a flame to the depending blank for reheating, shaping or supporting the blank, or for producing a combination of these effects; rotating the neck ring and blank during this state; removing the burners to permit the partially blown blank to sag; closing a finishing mold about the depending blank, and introducing air from the blow head to blow the blank to final form.

\*      \*      \*      \*      \*

"The nozzles 100 and 101 or their equivalents are capable of exercising two functions in the formation of the blank, namely, a heating function to facilitate distension of the blank, and a supporting or distension opposing function. These functions may be exercised either independently or in co-ordination, according to the varying conditions of the glass and the form or other characteristics of the ware to be produced.

"The object of the heating function is to soften the glass to the required extent and at the required portions thereof, so that the expanding blank will be distended at the desired rate and at the portions thereof necessary to impart to the blank the desired contour and thickness of the wall, both of which vary for different kinds of patterns of ware and for different portions of the same piece of ware."

In this Canfield patent the parison is formed in a reverted or pendent position, while in appellant's method the parison is at all times in an inverted position.

The examiner's ground of rejection of the claims was set forth in his statement as follows:

"Claims 1, 2, 4 and 5 are held to lack invention over the patent to Canfield, which discloses forming a parison, heating it while exposing a part thereof to the atmosphere (see Fig. 6) and then molding in a finishing mold while exposing a part thereof to the atmosphere (see Fig. 8). To do all this in inverted position as disclosed by Ingle, 1,680,544, on page 2, lines 45–51, does not amount to invention.

"Claims 3 and 6 are held to lack invention over Ingle in view of Canfield. Using the heating means of Canfield to blow the article with a part exposed to the atmosphere as shown by Canfield does not amount to invention."

The Board of Appeals in its decision stated:

"Appellant urges patentability in a method and apparatus for forming glassware in which he uses an inverted parison in a parison mold rather than as in the Canfield patent, forming the parison with the open end up. Appellant argues that it is necessary for Canfield to invert the parison and he has simplified the apparatus as well as the operation by omitting such step but this does not appeal to us as presenting patentable matter in view of the Ingle patent. Ingle, in the third paragraph on page 1, describes the very steps of forming glassware which steps, aside from the step of reheating the parison, are recited by appellant in his rejected claims. It appears that Ingle is interested in producing bottles and such reheating may not be desirable for bottles but Canfield shows the reheating step for the purpose of deforming hollow glassware as in appellant's method. We are in agreement with the examiner that the claims are un-patentable over Canfield and also on Ingle in view of Canfield, for the reasons given by him. We note the claims cover broadly the production of glassware which would include bottles."

We are in agreement with the views of the Patent Office tribunals that there is little difference between the method disclosed by appellant and that disclosed in the patent to Canfield except that in appellant's method the parison is at all times in an inverted position, with the open end down, while in Canfield the parison is formed with the open end up.

Appellant sharply challenges the view of the Patent Office tribunals that the only material distinction between the process disclosed by Canfield and that disclosed by appellant is in the position of the parison while being formed. He contends that in his process the parison is completely formed before the re-heating step is employed, while in Canfield the re-heating step is employed before the parison is formed. In other words, appellant claims that he treats the parison after it is formed, while Canfield's re-heating is a step in the forming of the parison.

In one sense of the word this may be literally true, but in substance we can see no material distinction between the two methods. In Canfield the parison is partially formed when the re-heating step is applied to a part of the parison to facilitate its final form for the blow-mold to be placed around it. In appellant's method a parison is fully formed and then a portion of the parison is heated in a closed burner for the purpose of facilitating its final form for the blow-mold to be placed around the parison.

That the method of Canfield is substantially the same as that of appellant, except with respect to the position of the parison during the process, is shown by claim 26 of the Canfield patent, which reads as follows: "26. The method of making hollow glassware, that comprises depositing a mold charge of molten glass in a blank mold, pressing a blank in said mold, removing said mold while suspending said blank from its upper portion, rotating said blank, heating said blank from below, partially expanding said blank, enclosing said blank in a blow mold, and expanding said blank to final form therein."

The next question is whether there was invention in applying the steps disclosed

by Canfield to a parison in an inverted position, that is, with the open end at the bottom.

As hereinbefore shown, the Ingle patent discloses a process of making hollow glassware by providing an inverted parison mold and employing the same steps as are set out in the rejected claim herein, except for the re-heating step named in such claims. While Ingle's preferred form is to revert the finishing mold containing the parison to an upright position, the patent states:

"When the parison C has been formed in this manner, the top closure of the mold is removed and the sections of the parison mold are swung apart, leaving the parison supported upon the sleeve 5 and the plunger 7. As soon as practicable after the parison mold has been removed, a finishing mold 15 is closed around the parison C as shown in Fig. 4.

"Fig. 5 shows the finishing mold 15 reverted to upright position, with a blow-head 16 applied to the top of the finishing mold, and a bottom closure 17 applied to the bottom of the mold. With the parts in this position, air is blown through the blow-head 16, thereby expanding the parison C into the finished form D shown in Fig. 6.

"*If desired, the step of reverting the finishing mold may be omitted and the article may be completed in the position shown in Fig. 4 by applying the closure member 17 while the mold is in this inverted position, and forcing air through the channel 8, thereby completing the article in one position.*" (Italics ours.)

The question is, therefore, would it require the exercise of the inventive faculty to modify the Canfield process by forming the parison in an inverted position, as shown by Ingle, or to modify the Ingle process by applying the re-heating step disclosed by Canfield after the removal of the parison mold and before employing the finishing mold. It will be noted from our quotation from the board's decision that it held that the claims were unpatentable over Canfield in view of Ingle, or over Ingle in view of Canfield.

We think that it would be obvious to one skilled in the art, following the teachings of Ingle, to apply the re-heating step disclosed by Canfield. If he did he would heat the same portion of the parison as is heated by appellant, with exactly the same results as are secured by appellant.

That is to say, Canfield heats the lower portion of the suspended parison; but with the parison inverted, as shown by Ingle and appellant, the Canfield re-heating would be at the top of the parison, leaving the lower portion in a chilled condition, enabling it to act "as a support for the parison during the entire finishing operation," as disclosed by appellant.

We find no error in the decision of the Board of Appeals and it is affirmed.

Affirmed.